IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MIRIAM E. BRIGGS-MUHAMMAD,

                           Plaintiff,[*]                                       OPINION AND ORDER

     v.                                                         12-cv-369-wmc

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration,

                           Defendant.

Plaintiff Miriam E. Briggs-Muhammad bring this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision by the Commissioner of the Social Security Administration ("SSA"), discontinuing her participation in the Plan for Achieving Self-Support ("PASS") program under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 1382a(b)(4)(B), 1383b(d). The Commissioner has filed an answer along with the relevant administrative records. Both parties have submitted briefing. After considering the record, pleadings and applicable law, the court will affirm the administrative decision and dismiss this case.

BACKGROUND[1]

In October 2001, plaintiff Miriam E. Briggs-Muhammad was approved to participate in the SSA's PASS program. The PASS program allows a Supplemental

---

[*] Terry D. Briggs is listed as a co-plaintiff. Upon review of the administrative record, however, it is evident that Miriam E. Briggs-Muhammad is the only real party in interest. Accordingly, all references to plaintiff pertain only to Miriam E. Briggs-Muhammad.

[1] The following facts are drawn from the pleadings and the administrative record (AR).

1

Security Income ("SSI") recipient who is blind or disabled to set aside some of his or her income or resources for a vocational objective, such as tuition or business equipment. *See* 42 U.S.C. §§ 1382a(b)(4)(B), 1383b(d).  To participate in the PASS program, an SSI recipient develops and pursues a vocational plan aimed at eliminating or significantly reducing the claimant's reliance on disability benefits. 20 C.F.R. §§ 416.1180, 146.1181. The SSI recipient must set forth in writing a viable and financially sustainable plan with a feasible employment goal.  20 C.F.R. § 416.1181. Once a PASS is approved, the SSA conducts an annual review to ensure that the applicant is following the provisions of the plan.  20 C.F.R. § 416.1181(d).

Under the terms of Briggs-Muhammad's PASS, she would earn an associate degree in paralegal studies from Kaplan University and gain employment as a "freelance paralegal."  She was to commence studies in 2001, and complete an associate degree program by October 2005.

In September 2004, Briggs-Muhammad submitted an amended PASS, advising that she had not completed her original PASS.  AR 77A.  Briggs-Muhammad noted, however, that she was still working toward her goal of obtaining an education and attending the University of New Orleans in hopes of completing a four-year college degree in paralegal studies. *Id*.  Specifically, Briggs-Muhammad indicated that she was enrolled in nine credit hours for the semester beginning in August 2004, incurring approximately $1700.00 in fees, books, tuition and taxes.  AR 80. She also planned to purchase an upgraded computer system with Westlaw and a printer with a "fax copy scanner" and needed to purchase a vehicle to replace her car, which was "totaled" in an

accident.  AR 80-83.  She estimated completing the degree program by December 2006.

In addition, Briggs-Muhammad agreed to comply with all of the terms and conditions of the amended PASS, which included: (1) reporting any changes in her plan to SSA immediately; (2) keeping records and receipts of all expenses made under the plan until asked to provide them to SSA; and (3) using the income or resources set aside under the plan only to buy the items or services approved.  AR 86-87.  Briggs-Muhammad acknowledged further that if she did not comply with the terms of the plan, SSA would treat the income or resources as excluded and could hold her liable for an overpayment of SSI benefits. *Id*.

In September 2007, the PASS administrator contacted Briggs-Muhammad as part of an annual review pursuant to 20 C.F.R. § 416.1181(d) to ensure compliance.  As part of the review, the administrator asked her to submit documentation of PASS expenses and progress towards her degree by October 28, 2007.  At Briggs-Muhammad's request, that deadline was extended to November 15, 2007.  When she did not supply documentation by the extended deadline, the administrator suspended her from the PASS program.  In doing so, the administrator advised that Briggs-Muhammad could resume the PASS within 12 months if she was able to follow the plan or provided a realistic amended plan.

In January 2008, Briggs-Muhammad submitted some documents to the administrator.  The administrator considered those documents, but concluded that they did not reflect satisfactory progress toward the goal of becoming a paralegal, as outlined by the amended PASS.  In response, Briggs-Muhammad requested further review.

In March 2008, she also submitted three grade reports from Kaplan University for semesters commencing in January, March and December 2007.  She did not submit receipts for school-related expenses such as tuition, books or internet service.  A summary of the documents Briggs-Muhammad actually provided show:  an auto repair bill (paid by insurance); an invoice for the purchase of an automobile in 2001 (but no bill of sale); an Office Depot receipt in the amount of $297.41; a post-office receipt for $92.96; a receipt for Madison Area Technical College for $68.76; and a Walmart receipt for $24.30.

The administrator ultimately affirmed the initial determination and held that suspension was appropriate effective December 2007, observing that (1) most of her receipts were for non-PASS items and (2) she had not shown at least half-time attendance in a degree program.  The amount of PASS funding set aside for plaintiff was $63,933.00.

Briggs-Muhammad then requested a hearing before an Administrative Law Judge to review the administrative suspension from the PASS program.[2]  At a hearing held on August 9, 2012, Briggs-Muhammad testified that she needed additional time to complete her program of study because of a learning disability and personal issues that interfered with her ability to complete her course work.  Briggs-Muhammad also pointed out that despite her difficulties, she was able to complete a paralegal program in June 2010.

While applauding plaintiff's completion of her degree, the ALJ found that it was irrelevant to whether she complied with her PASS in December 2007.  The ALJ explained

---

[2] The record reflects that the Appeals Council remanded plaintiff's case twice for additional proceedings, resulting in three separate hearings before an ALJ.  AR 14, 360-61.  One remand was necessary after the SSA lost plaintiff's file.  AR 361.

that Briggs-Muhammad had two options for preserving her PASS funding after receiving notice that it was under review:  (1) submit receipts to show she had properly used her funds for her education; or (2) submit a new amended PASS.  Since Briggs-Muhammad did neither, the ALJ found that she failed to comply with the terms and conditions of the PASS program.  AR 20-21.

The ALJ also made the following specific findings:

1.  On September 17, 2004, the claimant commenced an amended PASS for the purpose of obtaining employment as a freelance paralegal (20 C.F.R. 416.1180 and 416.1181).

2.  The claimant's course load was inconsistent with the term of the PASS agreement and she did not complete the program by the end date offered in her amended PASS.  Furthermore, she did not submit a written modification of her plan when her education and employment goal changed despite notice that she could submit a new plan at any time (20 C.F.R. 416.1181(a)(6), (a)(8), and (b)).

3.  The claimant was aware of her obligation to submit receipts related to her PASS program. Despite repeated requests from the Administration in September and November 2007, the claimant failed to provide documentation of actual PASS-related expenses she incurred in the pursuit of her PASS goals (20 C.F.R. 416.1182(a)).

4.  The claimant was not in compliance with her amended PASS as of December 2007 and the PASS was properly suspended.

AR 21.

The ALJ also emphasized that suspension was proper effective December 2007 "based upon the claimant's lack of progress and on the claimant's failure to submit documentation of any actual PASS-related expenses." *Id*.  Thus, the ALJ affirmed the original suspension on September 28, 2012. *Id*.

Briggs-Muhammad appealed the ALJ's final decision by requesting further

administrative review.  AR 10.  On March 7, 2013, the Social Security Administration

Appeals Council denied her request for review and affirmed the ALJ's decision.[3]


OPINION

In her present complaint, plaintiff Briggs-Muhammad alleges that the

Commissioner wrongfully suspended her participation in the PASS program in December

2007.  In support of her position, plaintiff notes that she required more time to complete

her degree program due to a learning disability and other personal issues.  Accordingly,

she argues that "the [ALJ's] decision denying the plaintiffs' claim is not in accordance

with the law and is not supported by substantial evidence."  She asks, therefore, that this

court to set aside the underlying administrative decision and reinstate her PASS

participation "retroactively back to December 2007."

A federal court reviews an ALJ's decision with deference and will uphold a denial

of benefits unless it is not supported by substantial evidence or is based on an error of

law.[4]   42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  In

determining whether substantial evidence exists, the court reviews the administrative

record as a whole.  *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001).  The court may

---

[3]   The Appeals Council's affirmance of the ALJ's decision constitutes the final decision of the
Commissioner of Social Security.  *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

[4] As in a denial of Social Security Disability Insurance benefits, an applicant whose PASS
proposal is rejected has a right to appeal through a request for reconsideration, 20 C.F.R. §§
416.1407, to the Social Security Appeals Council, 20 C.F.R. §§ 416.1467, and then to a United
States District Court, 20 C.F.R. § 416.1481.

not, however, decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.

One of the objectives of the SSI program is to help blind or disabled people become self-supporting.  20 C.F.R. § 416.1180.  With that goal in mind, SSA will pay SSI benefits without considering any part of the individual's resources and/or income that is set aside to fulfill an approved PASS. 42 U.S.C. § 1382a(b)(4)(B); 20 C.F.R. §§ 416.1112(c)(9), 416.1124(c)(13), 416.1225, 416.1180.

The implementing regulations set forth the requirements for establishing and maintaining a PASS. 42 U.S.C. § 1383b(d); 20 C.F.R. §§ 416.1225, 416.1180. In particular, a PASS must contain a beginning date and ending date to meet the employment goal, as well as establish target dates for meeting milestones towards that employment goal.  20 C.F.R. §§ 416.1226(a)(8)-(9), 416.1181(a)(8)-(9).  In addition, the employment goal may be modified, although any changes related to the modification must be made to the PASS plan as well.  *Id*. at §§ 416.1226(a)(6), 416.1181(a)(6).  The regulations further provide for annual compliance reviews by the agency. *Id*. at §§ 416.1226(d), 416.1181(d).

A PASS will be suspended, and income and resources excluded under the PASS will once again be counted, if the individual fails to follow the conditions of the plan or abandons the plan. 20 C.F.R. §§ 416.1227, 416.1182. The individual's PASS may be resumed at any time within twelve months of the notice of suspension if she begins to re-pursue the plan or an approved amended plan.  *See* SSA Program Operations Manual System ("POMS") SI 00870.050 (amended PASS), SI 00870.080 (resumption of PASS).

After twelve consecutive months of suspension, the PASS will be terminated.  POMS SI

00870.070B.

       Here, the ALJ found that plaintiff's amended PASS was properly suspended

because she failed to follow the conditions of her plan:

> First, the claimant has been pursuing a paralegal degree since 2001.  By 2007, she could not demonstrate that she was close to completing her degree.  This is true despite evidence that the Administration had already set aside funding in excess of $63,000 to assist the claimant in reaching her PASS goal (Exhibit 15/3).  The claimant explained that her learning disability and several personal crises had interfered with her ability to attend more classes per session or more sessions per year (See Exhibit 10).  However, the Administration invited the claimant to submit an amended plan if she could not meet the goals of her current plan.  If her ability to progress was diminished due to her learning disability, the loss of her great granddaughter, or consequences from Hurricane Katrina, the claimant could have submitted an amended PASS that she considered more achievable.[5]  The claimant was advised of her right to submit a new plan at any time (See Exhibit 2/1).  The Administration fully considered all of the alleged mitigating factors and nonetheless determined that the claimant was not making adequate progress (See Exhibit 4/1; Exhibit 17/3).  This was a reasonable determination.

AR 19 (footnote [renumbered] in original).

       Plaintiff does not dispute that she failed to complete a paralegal studies program

by December 2006 in compliance with the amended PASS approved in 2004.  Moreover,

once plaintiff realized that she would not graduate according to the time frame set forth

in her amended PASS, she was required to amend her plan in order to continue in the

PASS program and did not do so.  For this reason, plaintiff's PASS program participation

---

[5] The claimant submitted a PASS with the goal of becoming a freelance paralegal (Exhibit 24/1).  Her assertion that her learning disability diminished her ability to progress in the program at the same rate as other students was fully considered in this decision.  Under the regulations, a PASS must have a specific employment goal that is feasible for the claimant (20 CFR 416.1181(a)(4)).  The claimant represented that she could feasibly complete here PASS goal by December 2006 (Exhibit 24/5).

was properly suspended.

The ALJ also found plaintiff's suspension was proper because she failed to submit documentation of her PASS-related expenses as required by the terms of the amended PASS:

> Second, the claimant has failed to fulfill her contractual responsibility to submit documentation of her PASS related expenses.  In her amended PASS, which she signed on September 17, 2004, the claimant agreed to "keep records and receipts of all expenditures" and to provide them on request.  She was also advised that these receipts were to be for expenses related to the approved PASS only.  The claimant acknowledged that the Administration would not have to approve "any expenditures for which I do not submit receipts or other proof of payment" (See Exhibit 24/12).  The claimant cannot now argue that her failure to submit proof of tuition and other PASS-related expenses can be excused, or that her submission of receipts for non-PASS expenses should suffice.  The PASS program offers a path to self-support, but the program demands compliance with the rules.  In exchange for the opportunity to pursue a paralegal career, the claimant promised to demonstrate that the taxpayer dollars provided to her through the PASS program were used to attain that goal.  She did not hold up her end of that bargain.[6]

AR 19 (footnote [renumbered] in original).

Plaintiff also does not dispute that she failed to present documentation in support of PASS related expenses when asked by SSA during a routine compliance review in September 2007.  AR 37-38.  Although she submitted some receipts in March 2008, most of them were obviously for non-PASS items.  Moreover, despite being given ample time to produce proper documentation, plaintiff could provide *no* receipts for tuition, books, a computer or any other item outlined in her amended PASS.  AR 80-83.  Finally,

---

[6] The claimant continued to submit more documents over the years to show further progress toward her paralegal degree (See, e.g., Exhibit 15; Exhibit 27; Exhibit 47; Exhibit 67; Exhibit 70). However, there is no evidence that she submitted an amended PASS to reflect a modified path or end date.  Regardless, the evidence of progress after December 2007 is beyond the relevant time period under review.

as the ALJ observed, plaintiff was aware of her obligation to submit receipts for PASS-related expenses and that her failure to comply with the agency's request for such receipts could result in suspension of her PASS.  AR 86-87.  Yet to date, she has still submitted virtually no documentation of the more than $63,000 PASS-related expenses for the relevant time period.

Based on this record, plaintiff has not even begun to establish that the ALJ's decision's was unreasonable or unsupported by sufficient evidence.  Accordingly, the administrative decision is affirmed and this case will be dismissed.


ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, suspending plaintiff Miriam E. Briggs-Muhammad from the PASS program is AFFIRMED and this case is DISMISSED with prejudice.

Entered this 20th day of May, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

10